## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

Filed/Docketed
Jan 29, 2020

IN RE:

LAWRENCE A.G. JOHNSON,

Debtor.

Case No. 19-10956-M
Chapter 13

### MEMORANDUM OPINION

What is the scope of the good faith inquiry in a Chapter 13 case?  May a bankruptcy court look at all the facts and circumstances which gave rise to the filing of the case?  May it consider the nature of the disputes and debts which led to the filing of the Chapter 13 case?  May it consider the subjective intent of the debtor?  Or is the good faith inquiry in a Chapter 13 case limited to a determination of whether a debtor is surrendering all his or her disposable income under the terms of their proposed plan, regardless of the conduct that brought them to bankruptcy court?  The following findings of fact and conclusions of law are made pursuant to Bankruptcy Rule 7052 and 9014, and Federal Rule of Civil Procedure 52.

### Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C.A. § 1334(b).[1]  Venue is proper pursuant to 28 U.S.C.A. § 1409.  Reference to the Court of this matter is proper pursuant to 28 U.S.C.A. § 157(a), and it is a core proceeding as contemplated by 28 U.S.C.A. § 157(b)(2)(A).

---

[1] Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C.A. § 101 *et seq*. (West 2019) (the "Code").

**Findings of Fact**

Lawrence A.G. Johnson ("Debtor" or "Johnson") is an attorney licensed to practice law in the State of Oklahoma. Johnson is 87 years old and retired. He is married, and cares for his wife, who suffers from dementia.

In February 2014, Johnson filed an action in the District Court in and for Osage County, Oklahoma, (the "State Court") on behalf of Larry and Suzanne Pinney (the "Pinneys") against Roger and Connie Cornett (the "State Court Action"). The State Court Action arose out of a contract for the sale of real estate between the Pinneys and the Cornetts, a fire which destroyed the house on the property, and the battle over the insurance proceeds from the loss.[2] The State Court Action included claims by the Pinneys against the Cornetts, and counterclaims by the Cornetts against the Pinneys. The State Court Action was hotly contested. The case was ultimately tried to a jury and, after a trial lasting several days, the jury entered a defendant's verdict, dismissing all claims brought by Johnson and the Pinneys against Cornett. At some time thereafter, Ms. Cornett settled her claims against the Pinneys.

The jury verdict and settlement with the Pinneys did not end the dispute. On November 16, 2015, Ms. Cornett filed an Amended Motion for Sanctions (the "Sanctions Motion") against Johnson, alleging that he violated Oklahoma law in his representation of the Pinneys. Cornett sought monetary damages as a result of Johnson's alleged misconduct. The State Court held an evidentiary hearing on the Sanctions Motion on January 8, 2016. Johnson appeared at the hearing

---

[2] After execution of the contract for sale of real estate, the Cornetts divorced. Connie Cornett ("Ms. Cornett") was awarded the land described in the real estate contract and the State Court Action, and was at all times relevant hereto the real party in interest in the State Court Action.

on the Sanctions Motion, and was provided with a full and fair opportunity to litigate the claims contained therein.

For reasons unknown to this Court, the Sanctions Motion remained under advisement until December 18, 2018. On that date, the State Court entered its order sustaining the Sanctions Motion.[3] On February 19, 2019, the State Court entered a detailed Journal Entry outlining multiple items of lawyer misconduct by Johnson.[4] This Court will not attempt to repeat or summarize the findings of the State Court, except to note that the State Court found that Johnson acted in violation of Oklahoma statutes,[5] attempted to mislead the State Court, and advanced arguments that a "reasonable, competent attorney" could not advance in good faith.[6]

The State Court set a hearing to be held on February 11, 2019, to determine the amount of damages to be awarded in favor of Ms. Cornett and against Johnson as a result of Johnson's misconduct. Thereafter, on March 8, 2019, the State Court awarded Ms. Cornett a judgment against Johnson in the amount of $192,738.30 (the "Sanctions Judgment").[7] Johnson has appealed the Sanctions Judgment. Said appeal remains pending. Johnson has not posted a bond or taken any other action in State Court to stay enforcement of the Sanctions Judgment. On April 11, 2019, the State Court issued an order to Johnson to appear for an asset hearing on May 8, 2019.

On May 7, 2019, Johnson filed this Chapter 13 bankruptcy case staying the scheduled asset hearing. Lonnie D. Eck ("Eck") is the Chapter 13 Trustee in this case. In the schedules, Johnson lists assets of $725,122.70. Johnson claims that most, if not all, of these assets are owned by a trust

---

[3] *Trustee Exhibit 4.*

[4] *Trustee Exhibit 5.*

[5] Specifically, Okla Stat. tit. 12, § 2011(b)(2).

[6] *Trustee Exhibit 5.* The Court has carefully considered the findings made by the State Court in the Sanctions Order, and for reasons stated later, considers the facts in the Sanctions Order as established for the purposes of this Memorandum Opinion.

[7] *Trustee Exhibit 6.*

3

identified as the Sarah Ann Johnson Trust (the "Trust"). According to Johnson, his wife is the owner and/or beneficiary of the Trust. Johnson and his wife are co-trustees of the Trust; however, Johnson has managed the assets contained in the Trust from the date of its creation.[8] The two major assets identified in the schedules are the Debtor's residence valued at $283,553 and a "Vanguard SEP IRA" (the "IRA") valued at $423,654.70.[9] It appears that Johnson derives direct benefit from both assets. He lives in the residence, and receives distributions from the IRA. In addition, Johnson listed motor vehicles valued at approximately $27,000, and a bank account at RCB Bank with a balance of $38,354, all as being owned by the Trust. All of Johnson's monthly social security payments and retirement distributions are deposited into the RCB Bank account.  Apparently, funds from this account are used to pay the monthly expenses of Johnson and his wife, because, according to the schedules, Johnson has no other bank accounts. Johnson initially testified that all he owns are "the clothes on [his] back," although he amended that testimony to include his beneficial interest in the IRA. Johnson has claimed all his assets, including the assets allegedly held by the Trust, as exempt. Objections to his claims of exemption have been filed by Ms. Cornett and Eck.[10]

Johnson has two creditors: Ms. Cornett and Simmons Bank. Johnson holds a credit card issued by Simmons Bank, with an outstanding balance of $9,159.06.[11] The Simmons Bank claim is undisputed.  Johnson disputes the claim of Ms. Cornett. He does not dispute the debt to Simmons

---

[8] Johnson's testimony about the Trusts was less than crystal clear, and the Trust documents are not in evidence before the Court.

[9] In his initial schedules, Johnson claimed that the IRA was owned by the "Lawrence AG Johnson Trust." *Exhibit 1-14.* Immediately after the hearing on the Motion to Dismiss, Johnson amended his schedules to reflect that he is the owner of the IRA. *Docket No 51* at 5.

[10] The Court has deferred consideration of those objections pending ruling on whether the case should be dismissed.

[11] *Claim No. 1.* The Court takes judicial notice of the filed claim of Simmons Bank on its own motion.

Bank. Both creditors have timely filed proofs of claim. Based upon the proof of claim filed by Simmons Bank, Debtor was current on his obligations to Simmons Bank at the time the case was filed.

Johnson filed his Chapter 13 Plan (the "Plan") with the petition.[12] Under the terms of the Plan, Johnson proposes to make payments of $650 for a period of 60 months. The Plan proposes to pay attorneys' fees over the first seven months of the plan, with the balance of payments going to unsecured creditors (ostensibly Ms. Cornett and Simmons Bank) on a *pro rata* basis. The Plan projects that unsecured creditors will receive 15.4% of their allowed claim. Under the Plan, if Ms. Cornett has her claim allowed in full, she could expect to receive approximately $29,681.70 over the life of the Plan.

On September 24, 2019, Johnson filed an objection to Ms. Cornett's claim.[13] Johnson alleges that Ms. Cornett "has not provided independent proof as to why she is owed $192,798.30," and that the Sanctions Award is of no force and effect and should be given no weight by this Court, because the Sanctions Judgment is presently on appeal. Ms. Cornett has responded to the objection to her claim, alleging that the *Rooker-Feldman* doctrine operates to bar this Court from reviewing or modifying the Sanctions Judgment. The Court has deferred consideration of the objection to claim while this motion to dismiss remains pending.

Johnson lists income for he and his wife of $7,537, and expenses of $6,887.79, leaving a monthly net income of $649.21.[14] In calculating this net income, Johnson excluded all the monthly social security benefits received by Johnson and his wife.[15] As a result, Johnson has $3,419 per

---

[12] *Trustee Exhibit 2.*
[13] *Trustee Exhibit 8.*
[14] *Trustee Exhibit 1-27.*
[15] Johnson listed his monthly benefit as $2,481, and his wife's monthly benefit at $938, for a total of $3,419.

5

month he retains for his personal use that would not be used to satisfy the two creditors under the Plan.

On September 5, 2019, Eck filed his motion to dismiss this bankruptcy case, alleging that Johnson filed the case in bad faith.[16] Johnson filed a timely resistance to the motion, contending that the totality of the circumstances in this case does not support dismissal of the case, and that Eck has failed to show how dismissal of the case is in the best interest of creditors.[17] The Court held an evidentiary hearing on the motion to dismiss on November 19, 2019, after which the matter was taken under advisement.

To the extent the "Conclusions of Law" contain items which should more appropriately be considered "Findings of Fact," those findings of fact are incorporated into the Court's findings of fact by this reference.

## Conclusions of Law

The United States Court of Appeals for the Tenth Circuit (the "Tenth Circuit") has ruled that a Chapter 13 case may be dismissed as being filed in bad faith based upon "the totality of the circumstances."[18] Factors that may be considered include

> the nature of the debt, including the question of whether the debt would be nondischargeable in a Chapter 7 proceeding; the timing of the petition; how the debt arose; the debtor's motive in filing the petition; how the debtor's actions affected creditors; the debtor's treatment of creditors both before and after the petition was filed; and whether the debtor has been forthcoming with the bankruptcy court and the creditors.[19]

---

[16] *Docket No. 32*.
[17] *Docket No. 33*.
[18] *In re Gier*, 986 F.2d 1326, 1329 (10th Cir. 1993).
[19] *Id.* at 1329 (quoting *In re Love*, 957 F.2d 1350, 1357 (7th Cir. 1992)).

The inquiry regarding good faith is factual.  The decision to dismiss a particular case is left to the discretion of the bankruptcy court.[20] The question is whether the filing "abuses the provisions, purpose or spirit of Chapter 13."[21]

Johnson argues that the "totality of the circumstances" test is no longer valid in this circuit, citing a footnote in the Tenth Circuit decision of *In re Cranmer*.[22]  The issue in *Cranmer* was whether income from Social Security must be included in determining the amount to be paid under a Chapter 13 plan. The bankruptcy trustee said yes, and the bankruptcy court agreed, denying confirmation. On appeal, the district court reversed and held that Social Security income was excluded from the disposable income calculation. The Tenth Circuit agreed with the district court. The only issue before any of these courts was the issue of inclusion of Social Security income. None of the other *Gier* factors came into play.  *Cranmer* does not address the issue of dismissal of a Chapter 13 case, nor does it abrogate the "totality of the circumstances" test as it applies to the issue of dismissal.

Johnson also cites a 2015 decision by Judge Karlin from the District of Kansas, *In re Wark*,[23] in support of the proposition that the "good faith factors have been questioned" in considering whether a case or a plan have been filed in good faith. Johnson correctly notes that *Wark* contains these words; however, they are to be read in their context:

> The continued viability of the *Flygare* factors, although not overruled, has been questioned by subsequent Tenth Circuit cases. In *Anderson v. Cranmer (In re Cranmer),* the Tenth Circuit noted in a footnote that the Bankruptcy Code has been amended since *Flygare* was decided to include § 1325(b), and that "[s]ection 1325(b)'s 'ability to pay' criteria subsumes most" of the *Flygare* factors such that the "good faith inquiry now has a more narrow focus." The Tenth Circuit stated in

---

[20] *Id.* at 1328.
[21] *Flygare v. Boulden (In re Flygare*), 709 F.2d 1344, 1357 (10th Cir. 1983) (quoting *In re Estus*, 695 F.2d 311, 315-16 (8th Cir. 1982)).
[22] 697 F.3d 1314, 1319 n. 5 (10th Cir. 2012).
[23] 543 B.R. 522 (Bankr. D. Kan. 2015).

*Cranmer* that bankruptcy courts still need to consider "factors such as whether the debtor has stated his debts and expenses accurately; whether he has made any fraudulent misrepresentation to mislead the bankruptcy court; or whether he has unfairly manipulated the Bankruptcy Code." When considering the good faith analysis for that case, the *Cranmer* court noted that "[i]t simply was not bad faith for [debtor] to adhere to the provisions of the Bankruptcy Code and, in doing so, obtain a benefit provided by it."

<u>Binding precedent, therefore, requires this Court to look at the totality of the circumstances when faced with the question of a debtor's good faith in proposing a Chapter 13 plan.</u>[24]

This judge agrees with Judge Karlin:  the totality of the circumstances test is alive and well in this circuit.  Were the Court to accept Johnson's argument, it would be tantamount to a ruling that a debtor's motivation in filing Chapter 13 was irrelevant, and that a debtor was free to abuse "the provisions, purpose, or spirit of Chapter 13," so long as she or he made their plan payments. This Court has previously rejected a similar argument in Chapter 11 cases,[25] and rejects the argument here.

*Nature of the Debt*

There are no secured creditors in this case and only two unsecured creditors. With respect to the debt owed to Simmons Bank, this credit card debt was under $10,000, and current as of the date the case was filed.[26] Johnson filed this case to abrogate the Sanctions Judgment, with a goal

---

[24] *Id.* at 538-39 (emphasis added).

[25] *In re Forest Hill Funeral Home & Memorial Park*, 364 B.R. 808, 821 (Bankr. E.D. Okla. 2007) (rejecting the idea that the fact that a debtor has new management post-petition eliminates from consideration the conduct of management pre-petition in the determination of whether the case was filed in good faith).

[26] In addition to being current on the Simmons Bank debt, the Court notes that Johnson has more than adequate funds to retire the Simmons Bank debt on a relatively expedited basis. As noted in the findings of fact, Johnson and his wife receive $3,419 per month in social security benefits. Those funds are not included in Johnson's disposable income, and are not used to provide for other monthly expenses of the couple, if Schedules I and J are to be taken as true. Therefore, Johnson, who was current on the Simmons Bank debt when the case was filed, could retire the debt in a matter of a few months.

of paying as little of that judgment as possible. The Court finds that this case is, for all practical purposes, a one creditor case.

*Whether the Sanctions Judgment is Dischargeable in a Chapter 7 Case*

Several bankruptcy courts have held that "egregious behavior" by an attorney may give rise to a claim of nondischargeability under § 523(a)(6).[27] Ms. Cornett has timely filed an adversary proceeding to determine the Sanctions Judgment nondischargeable under § 523(a)(2), (4), and/or (6).[28]  The findings contained in the Sanctions Judgment suggest that Johnson acted without justification in a manner calculated to deprive Ms. Cornett of various property interests. This adversary proceeding is in its infancy, and the Court does not intend to prejudge its merits. That being said, there is a possibility that the Sanctions Judgment is not dischargeable in a Chapter 7 case.

*Debtor's Motive in Filing the Chapter 13 Petition*

Eck argues that Johnson filed this case for two reasons, both solely related to the Sanctions Judgment. Eck contends that, in the short term, Johnson wanted to stay enforcement of the Sanctions Judgment, including but not limited to the holding of an asset hearing on May 8, 2019. In the long term, Eck argues that Johnson hopes to discharge the Sanctions Judgment in this case. Johnson admits that he sought relief from this Court in order to invoke the protections afforded debtors under Chapter 13 of the Bankruptcy Code, including the stay of actions in a state court and to obtain a discharge of the debt he owes to Ms. Cornett. Johnson contends that this is not, in and

---

[27] *See Burrus v. Burrus (In re Burrus)*, 598 B.R. 315, 336-37 (Bankr. W.D. Okla. 2019) (and cases collected therein).
[28] *Adv. Proc. 19-1050-M.*

of itself, bad faith. Johnson admits that "if the filing is a mere continuation of a state court dispute, then it would be a two-party dispute upon which bankruptcy court is not a proper forum [sic]."[29]

This case was filed solely because of the Sanctions Judgment. Johnson has one other creditor. He has the ability to satisfy that claim in full, either through the use of funds on hand or over a relatively short period of time using available income. In essence, what is before this Court is a two party dispute between Johnson and Ms. Cornett. Johnson proposes a plan that would pay Cornett a small percentage of her claim, *if the claim is allowed*. Johnson goes a step further and asks the Court to disallow the Sanctions Judgment on the basis that "there is no factual basis in the record for the [Sanctions Judgment],"[30] and that Ms. Cornett "cannot rely upon the [Sanctions Judgment] to prove her claim under the doctrine of issue preclusion[.]"[31] The Court concludes that Johnson not only seeks to discharge the Sanctions Judgment, he seeks to relitigate the Sanctions Judgment before this Court.[32] This is exactly the "mere continuation of a state court dispute" Johnson admits is improper.

*Debtor's Treatment of Creditors Before and After the Filing of the Bankruptcy Petition*

Johnson's treatment of Ms. Cornett prior to the filing of the bankruptcy case is documented in the Sanctions Judgment. Subsequent to the filing of the case, Johnson has sought to relitigate

---

[29] *Debtor's Trial Brief, Docket No. 49*, at 3.

[30] *Trustee's Exhibit 8-1*.

[31] *Id.* at 8-2.

[32] Johnson's argument that the Sanctions Judgment has no effect in this Court is contrary to prior published rulings of this Court. In *In re Abboud*, 232 B.R. 793 (April 16, 1999); *affirmed*, *In re Abboud*, 237 B.R. 777 (BAP 10th Cir. 1999), this Court held that the *Rooker-Feldman* doctrine precludes review of a state court decision by a bankruptcy court, and that, until reversed or vacated, the state court judgment is entitled to full faith and credit. The Court restated that position in a subsequent case and its decision was affirmed by the United States District Court for the Northern District of Oklahoma. *See In re Polishuk*, 243 B.R. 408 (August 24, 1999); *affirmed, Polishuk v. Polishuk (In re Polishuk),* District Court No. 99-CV-901-C(J) (slip op. October 19, 2000). Johnson fails to address these cases or suggest why they do not apply to the facts at bar.

and ultimately disallow the Sanctions Judgment, or, at most, pay a small percentage of the claim.

*Whether the Debtor has been Forthcoming with the Bankruptcy Court and Creditors*

Johnson has taken the position in this Court that all he owns are "the clothes on his back," and that the major assets he controls (his residence, his bank accounts and the IRA) are beyond the reach of his creditors. This remains an open question. Johnson has claimed each of these items as exempt; however, Eck and Ms. Cornett have objected to the claimed exemptions, alleging that Johnson's actions in placing the assets in trust may have destroyed their exempt status. Eck has requested information and documentation regarding the IRA that, based upon the record before the Court, has not yet been provided.[33] Unless and until Johnson provides all of this information, the question of whether he has been forthcoming remains open.

*The Effect of Allowing this Chapter 13 Case to Proceed (the True "Totality of the Circumstances")*

The best way to determine whether this case "constitutes an abuse of the provisions, purpose or spirit of Chapter 13"[34] is to consider the effect of the relief Johnson seeks. Johnson contends he has presented a confirmable, feasible Chapter 13 Plan. Were the case to proceed as Johnson intends, and he receives all the relief he seeks, the result would be:

1.  Johnson would keep all of the real and personal property he presently controls, free and clear of the claims of his two creditors;

2.  Johnson would be allowed to re-litigate the Sanctions Judgment without regard to the findings or conclusions of the State Court;

---

[33] *Docket No. 15*. In fairness, the Court does not know whether this information has been provided, and understands that the parties have held most matters in this case in abeyance pending the Court's ruling on dismissal.

[34] *Gier*, 986 F.2d at 1329.

3. Ms. Cornett would be forced to re-litigate the facts and circumstances surrounding the Sanctions Judgment, most likely at her own expense; and

4. Assuming the Sanctions Judgment were to be allowed as a claim in her case; Ms. Cornett would receive approximately 15% of her claim over five years without interest.

The Court concludes that the primary if not the sole purpose of this bankruptcy case is to thwart the Sanctions Judgment, escape payment of the same, and (in what Johnson would consider a perfect world), to relitigate the matter anew. The bankruptcy court does not exist to give losing parties a "Mulligan"[35] in a two-party state court dispute. The Court finds, under the totality of the circumstances, that this case should be dismissed, and Johnson and Ms. Cornett should return to State Court to resolve the dispute between them.

## Conclusion

This case is dismissed. A separate Judgment consistent with this Memorandum Opinion is entered concurrently herewith.

Dated this 29th day of January, 2020.

BY THE COURT:

TERRENCE L. MICHAEL
UNITED STATES BANKRUPTCY JUDGE

7393v3

---

[35] Golfers know exactly what the Court is referring to. For the rest of the world, a "Mulligan" is a second shot when the golfer is not satisfied with the result of the first. It is the equivalent of a second bite at the apple, and not allowed within the Rules of Golf either.